The central issue raised in this appeal is whether a criminal defendant is entitled to sentencing credit for pre-sentence time spent on non-electronic home confinement or it is not. To answer this question requires analyzing two amendments to the Unified Code of Corrections, one made in 2012 and the second set of amendments in 2016. The issue before this Court remains one of statutory construction, which is reviewed de novo. To fully understand our argument, I think it would be helpful to review the history of this development of the law. In 1990, our Supreme Court in People v. Ramos held that a defendant who was not entitled to sentencing credit for pre-trial home confinement as a condition of bond. But at that time, the relevant statute simply stated that credit was to be given for time spent in custody as a result of the offense for which the sentence was imposed. Our Supreme Court concluded that the legislature did not intend this term in custody to apply to defendants released on bail, even if there was home confinement. In 2008, in People v. Beauchamp, the Court distinguished Ramos based on a unique set of facts, but it reaffirmed in central holding, making clear that it was based on the fact that the statute at the time did not define the term in custody, so the Court had to interpret an ambiguous provision. Based on the meaning of in custody in other contexts, the Court decided that it must mean to be incarcerated. So basically, you only got the credit if, in fact, you were in jail or something much of the code was amended to explicitly command that, with one exception that does not apply here, quote, the trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5883. Section 5883 in turn is a section in what was the electronic home detention law describing the conditions under which a defendant may or may not be placed in an electronic home detention program. In my prior appearance in this appeal, I argued that the plain meaning of the amended statute had to be given effect. Shall give credit for home detention means shall give credit. We acknowledge that the third district panel in People v. Smith came to a contrary conclusion, but it did so by focusing on the definitions section of the electronic home detention law, Section 5882, not 5883. It maintained that since home detention was defined as the confinement of a person convicted or charged with an offense to his or her place of residence under the term established by the supervising authority, unquote, and the definition of supervising authority did not include the court, which sets the terms and conditions of bond, then in its opinion, the legislature must not have intended for home detention to include detention while in bond and that the rule in Ramos was still controlled. I argued that this was not correct because the legislature clearly intended to overrule Ramos when it amended Section 5, 4.5100B, and I pointed out that this interpretation would render that amendment meaningless because when else would someone get credit for time served in home detention except as a condition of bond, but obviously this was not sufficiently persuasive. However, exactly one week before this court entered its prior judgment, Public Act 99-0797 was signed into law by the Governor and took effect, changing the name of the electronic home detention law to, quote, the Home Detention Law. And among other things, it amended both Sections 5AA2 and 5AA3. But Mr. Whitney, she served her time, hasn't she? That is correct. And so this case is moot as to her, isn't it? It is technically moot. However, as we move and as the State agreed, we believe that this is a substance of the appeal based on the public interest doctrine, and so this court has granted review on that basis. It does raise an interesting question, however, Your Honor, as far as one of the things that the Supreme Court asked this court to do was determine whether to apply retroactively to Ms. Vandenberg, and obviously that literally cannot happen right now. Based on that, I venture no opinion as to whether this court should or should not address the retroactivity issue anyway. I'm more concerned with what happens to future defendants who are on home detention while on bond and whether or not they get pre-sentence credit for it. But to the extent that this court may want to consider the retroactivity question anyway, following the Supreme Court's order, I made the case in our supplemental brief that at least these provisions of the new amendment appear to clarify the existing law, not change the substance of the law, and therefore it should be given a retroactive effect. But, you know, unless the court has some questions on that, I intend to basically stand on what's in the brief on that because I think it's less important than the overall merits question. Do you agree this is a case of first impression? Well, it is with respect to the 2016 amendments, yes, it would be. It is not in the sense that with respect to the 2012 amendments because obviously there was the people of E. Smith and this court's prior decision. So with respect to these 2016 amendments, what they did with respect to the 2016 amendments was they made it clear that one of the things that was considered supervising authority was any officer or agency charged with authorizing and supervising electronic monitoring and home detention, whereas before it just said monitoring home detention. And then similarly in Section 5883 and in several other sections of this law, it changed the term electronic home detention to include, quote, electronic monitoring or home detention in several different sections, including 5883, making clear that both electronic monitoring and other forms of home detention all fell within the ambit of this law. Now, I agree that these changes did not directly address the argument in Smith. However, it does strengthen our argument that the legislature intended to give defendants credit for time served while in home detention electronically monitored or otherwise while in bond-awaiting trial because if we read Section 5, 4.5, 100B together with the amended version of Section 5883, it gives us the following picture reading the statute as a whole. Section 5, 4.5, 100B, and I apologize for the numerical soup here, says that, quote, the trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms, et cetera, as provided in Section 5883. And then when you go to the new version of 5883, it explicitly states that with some exceptions for sex offenders, which is beside the point here, a person charged with or convicted of an excluded offense, and I'm quoting here, a person charged with or convicted of an excluded offense may not be placed in an electronic monitoring or home detention program except for bond-pending trial or appeal, and then so the new combination of these two statutes, Section 5, 4.5, 100B, says that you get credit for time spent in home detention while awaiting trial, and the new version of 5883 says that when you are on bond-awaiting trial, that is one of the circumstances in which you can be placed on home detention, electronic or otherwise. So then it says you lock the switch, and there's nothing no longer missing here, if I may complete the thought. Yes, go ahead. The courts no longer have to interpret what in custody means, because the definition of custody is no longer relevant. If you're awarded a home detention as a condition of bond, you get pre-sentence credit for because read together, that's what these two statutes now say. Thank you, Your Honors. Thank you, Counsel. Counsel? Pardon? One of our attorneys said I am in, so I am blanking in here, but I'd like you to have the phone. No problem. I'm not going to call anybody else, but you have the phone. I'll follow this order. Sorry, Patrick. Thank you very much. May it please the Court, Mr. Whitney. Well, I'll touch briefly upon the mootness issue, because the defendant actually states that the state does agree that this would fall under the public interest exception to the mootness doctrine. Our opinion on that largely is driven by the fact that, number one, we do have a new set of factual circumstances here where this Court is being asked to consider this particular issue within the construct of the new amended statutory scheme, coupled with the fact that the Supreme Court had remanded this with specific directions in its mandate under its supervisory authority. It at least signals, if nothing else, that the Supreme Court has viewed this as an issue that needs to be addressed by the Court. This Court does, of course, have a duty to determine its own jurisdiction. That would be number two out of the three under the Commonwealth Edison case, the need of an authoritative determination for the future guidance of public officials. That's correct, Your Honor. And so looking at the Commonwealth Edison case, I have a question for you. The Court, I think, says whether the laws in disarray or conflicting precedent exists is what we should look to as far as whether this factor would apply. And I don't – would you address whether the laws in disarray or whether there is a conflicting precedent? Well, it's hard to say that the laws in disarray based upon the present version of the statute because this is the first time any court that I've found, and I usually research these issues before coming to court, has specifically addressed or has been asked to address the new version of the statute and whether its applicability alters the existing analysis. Now, the – there is no precedent leading up to this which is in conflict with how this court originally ruled with regard to its reliance upon Smith, whose derivative reliance upon Ramos and Beecham, which are Supreme Court decisions and they're still forefinding until determined otherwise. So, I mean, it's a good point, Your Honor. I can see that. There is no – there is no conflict as of this point. But I do think that I rely – and maybe I'm – maybe I'm not right in this regard, but I do rely very much upon the fact that the Supreme Court's supervisory authority has directed determination of this as sort of implanting the recognition that there has been a change in the law, if you will, be it by statutory language or otherwise, that's a need of guidance and direction from the reviewing court. So, it doesn't necessarily answer the question on points. The precedent is still valid. If you're going to come with us in all those cases that you're – that rely upon those three parts for the public interest exception due, it's still the law. Yes, that's correct, Your Honor. If the court disagrees with me and the court finds that the issue is moved, obviously this appeal has to be dismissed for lack of jurisdiction. So – but it's my, you know, honest assessment. And to be perfectly frank, Your Honor, I – and this is more – this is not a legal position. Maybe it's more of a personal one. This court – this argument had been set for oral argument at the time when the defendant was still set on mandatory supervisor release. I had a plethora of health problems. I had to withdraw from oral argument. It was continued by the court until now. This was a long time ago. I feel sort of responsible, to some degree, for coming at this point where the movements document becomes applicable. So – and I apologize for that. There wasn't much I could do about it. I could not go to the hospital. But, you know, that's one consideration as well. I can throw it to the defendant's side. They were writing oral arguments at the time that this was, you know, originally set before this court. That doesn't – that doesn't share the lack of jurisdiction. It doesn't have anything to do with what we're supposed to do under the Commonwealth medicine. No, that's – that's not to understand. It doesn't have anything to do with the legal analysis. I just want to be perfectly frank with the court about the circumstances in that regard. Now, necessarily for the sake of argument, this court does bypass the movements doctrine and proceed to argue the merits of this. Our position is essentially that the amendments to the statute do not alter the underlying legal premises that this court originally relied upon, and that's reliance upon the decision of Smith and Stover. The amendments, as the defendant is characterizing them, I mean, I don't – I don't disagree necessarily. It's fairly obvious that the legislature was adding language, I think, both to contemplate the utility of electronic monitoring devices along with that which is going to be used within the home for purposes of home detention, whether that explicitly created a non-electronic or electronic version of home detention. There is a provision in the sentencing – excuse me, in the statutes which describes home detention as being either electronic or not, I believe. So I don't disagree with that necessarily. However, what it comes down to is not really the parsing of the language about whether it was an electronic or non-electronic home detention, but it comes down to an issue of the fact that the defendant was in detention at the time that he was, you know, that she was on bond from the court. As the court's aware of the factual background of this case, this defendant was placed on bond. It asked that bond reduced. The court agreed to reduce the bond, the condition being that the defendant would agree voluntarily to certain conditions that would encompass, you know, being placed in the home. And these were conditions that were set forth by the trial court. And when you look at these facts and you look at them in congruency with Smith, Smith makes it clear that, number one, the Supreme Court precedent is that you have to be, if you're on bond, that the traditional notions of being in custody do not apply. I don't believe that that condition has changed at all here. Number two, that here, like in Smith, you know, where the defendant has exchanged or sought out this bond, if you will, and agrees to these conditions, that it doesn't constitute the traditional notions of custody or detention. The statute that we're looking at here, 5-5-4.5b, is a credit for time spent in custody statute. And so the contemplation there is that when there's a home detention, the detention bears the hallmarks of home, of custodial detention. Here this is a matter of supervision imposed by conditions derived from the court and not from the probation department or the supervising authority, as the statutory provisions make reference to. So I think that the point that Smith makes is a valid one, that the whole point of getting an appeal bond is to avoid custody, and that the sentencing code does not anticipate that one would get sentencing credit for time that's being spent while on bond, which is precisely what's happening here. The defendant sought this out, the defendant received it, the defendant agreed to these terms, and now the defendant wants to take advantage of that benefit that had been granted to the defendant by also getting credit for that time. But this is a condition that's sought out by the defendant as part of the quid pro quo, if you will, for not being in custody. And therefore, the sentencing provisions of 5-5-4.5b will not apply. This is essentially what Smith held, this is what this court agreed with, and it's an original order. Pursuant to the Supreme Court's directive in its remand and supervisory notion, our position is that the amendments as they are written do not alter any of the fundamental characteristics of the conditions precedent to the defendant being released on bond and subject to the conditions that the court imposed upon the defendant at that time. And so the amendments change language, but they don't fundamentally alter the characteristic that's integral to this case, and that's why the defendant was actually in her home detention. Our position is that she was not. Does the court have any questions for me? I don't believe so. Thank you, Your Honor. Thank you, Counsel. Counsel? Thank you, Your Honor. Briefly returning to Justice Mueller's question about mootness, I would call the court's attention to our response to the court's April 26, 2018, show cause order. We rely not so much on the Commonwealth Edison case, but on People v. Roberson at 212 Hill 2nd 430, which had facts very, very similar to this. As a matter of fact, that was a case involving interpretation of Section 5-8-7C of the Unified Code of Corrections, very close to the same part of the code under consideration here. And like Ms. Vandenberg, the defendant in Roberson had finished serving his sentence completely while the appeal was pending. However, our Supreme Court held that the public interest exception to the mootness doctrine applied, and it used the three-part test of asking the public nature of the question, the likelihood that the question will recur, and the desirability of an authoritative determination for the purpose of guiding public officers. And I think what needs to be, what I would highlight here is that second criterion, the question of the likelihood that the question will recur, I think is extremely important here in light of the fact that the use of home detention and or electronic monitoring has grown and is likely to continue to grow as county governments increasingly struggle with the high cost of jail detention and budgetary restrictions. And I cited a law review article to that effect, and I think it's fairly common knowledge that this is something that courts at least want to have the option of exploring. And by the way, that was reflected in the new amendments that were just adopted in Public Act 990797. A lot of the amendments which are not really a consideration here had to do with authorizing chief judges of every circuit court to establish a program for contracting out electronic monitoring of offenders to private vendors and so on. So we can anticipate that there will be more of these questions arising in the future, and that is an additional reason why I think it is important to address this question. And not so much it can't apply to Ms. Vandenberg, of course, but for the sake of establishing some future clarity in the law. Opposing counsel has spoken of the quid pro quo of being released to home detention as part of the agreement to not be in custody as a condition of bond. And while that's certainly true, that's not what we're relying on here. We're relying on the plain language of the statute, and that's the question before us. It's a hardware principle of statutory construction that the court's duty is to give effect to the purposes of the law, to the intent of the legislature, and that's really what we're called upon to do here. And, of course, the first indication of what that legislative intent is, you start with what's in the language. And so I return to, again, what's in the clear language. Trial court shall give credit to the defendant for time spent in home detention as provided in Section 5AA3. And now we know a little bit more clearly than we did before that 5AA3 includes time spent on home detention, even with or without electronic monitoring, while on bond. This links the two together very much more clearly, well, at least somewhat more clearly than it did before. Again, I suggest that because of this, this change in the law that occurred about two years after Smith was decided, that the legislature was trying to eliminate this final ambiguity and make clear that that is what it intended to do, to allow defendants to receive proper credit for time spent in home detention, basically saying, no, we're no longer going to rely on this ambiguous definition of what in custody means. We're going to say explicitly, if you're in home detention on bonds, you get the credit for the time served in home detention. With that, unless there are any other questions, I would respectfully urge the court to make such a holding in this case. I don't believe there are. Thank you, counsel. Thank you, Your Honor. We appreciate the briefs and arguments of counsel. We'll take the case under advisement, issue an order in due course.